UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 05/31/2019
```

ALEXIS MONDRAGON,

         Plaintiff,

    -against-

LEONARD KEFF, et al.

         Defendants.

15-CV-2529 (JPO) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. J. PAUL OETKEN**

**BARBARA MOSES, United States Magistrate Judge.**

    Plaintiff Alexis Mondragon filed this action against Keff Enterprises, LLC (Keff Enterprises), Keff NYC, Inc. (Keff NYC), Leonard Keff (Keff), and Eric Raphael Schamma a/k/a Eric "Ricky" Schiffer (Schiffer) on April 2, 2015, seeking payment of unpaid overtime wages and related relief under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law (NYLL), N.Y. Labor Law § 190 *et seq.*, all arising out of her work as a Finishing Department Supervisor at defendants' knitting factory. Compl. (Dkt. No. 1) ¶¶ 1-3. Plaintiff alleges that she worked at the factory from September 2012 to December 2013, at a stated rate of $20 per hour, but that throughout her employment defendants either underpaid her (by, among other things, failing to pay her for her overtime hours) or did not pay her at all. *Id.* ¶¶ 1, 36-45. By order dated January 12, 2016, Your Honor granted plaintiff's motion for default judgment and referred the matter to the Hon. Frank Maas, United States Magistrate Judge, for a damages inquest. (Dkt. No. 21.) The inquest was later reassigned to me.

    For the reasons that follow, I respectfully recommend that plaintiff be awarded damages against all defendants in the amount of $30,020, comprising (a) $12,510 in unpaid overtime wages (at the rate of $30 per hour), (b) $12,510 in liquidated damages under state law, and (c) $5,000 in statutory damages under state law. In addition, I recommend that prejudgment interest

be awarded in the amount of $6,854.48, plus additional interest at the statutory rate of 9% from the date of this Report and Recommendation (Report) to the date of entry of final judgment. Attorney's fees and costs should also be awarded, in the amounts of $7,927.50 and $556, respectively.

## I.     BACKGROUND

### A.     Factual Allegations

Plaintiff alleges that Keff Enterprises and Keff NYC are New York corporations with their principal place of business at 142 West 36th Street in New York City. Compl. ¶¶ 9-13.[1] During the time period at issue in this action, both entities participated in interstate commerce and had gross annual revenues greater than $500,000. *Id*. ¶¶ 10-11, 14-15. Keff was an owner and/or shareholder of Keff Enterprises and "actively participate[d] in the business of the corporation." Compl. ¶ 19. Keff hired and fired workers, directed their daily activities, and otherwise "exercised substantial control over the functions of the company's employees," including Mondragon, who "considered him to be her direct supervisor as well as her boss." *Id*. ¶ 20-21. Schiffer was the Chief Executive Officer of Keff NYC. *Id*. ¶ 24-25. He too "actively participated in the business of the corporation," managed certain aspects of its operations, and "had the authority to hire, terminate, discipline, set rates of pay, and schedule workers including Plaintiff." *Id*. ¶ 26.

---

[1] The online Corporation and Business Entity Database maintained by the New York State Department of State lists Keff Enterprises as an active domestic limited liability company and Keff NYC as a domestic business corporation that was dissolved on August 31, 2016. *See* N.Y. Dep't of St., Div. of Corp., St. Records & UCC, *Corp. & Bus. Entity Database*, https://www.dos.ny.gov/corps/ (last visited May 31, 2019). The registered address for Keff Enterprises is 142 West 36th Street, 2nd Floor, New York, NY 10018. *Id*. The registered address for Keff NYC was 142 West 36th Street, 8th Floor, New York, NY 10018. *Id*. Leonard Keff is listed as the agent for service of process on behalf of both entities. *Id*.

Plaintiff's remaining factual allegations run against all four defendants jointly. She worked as a Finishing Department Supervisor at "[d]efendants' knitting factory" from September 2012 through December 2013, at a promised rate of pay of $20 per hour. Compl. ¶¶ 31-33, 37. Her primary responsibilities were to "manage flow of production on factory floor, make sure shipments went out on time, check quality of production, [and] train hand finisher[s] and menders." *Id.* ¶ 33. Plaintiff had "no authority to hire, terminate, discipline, schedule, or set rates of pay for any other employee of [d]efendants." *Id*. ¶ 34.

Defendants hired plaintiff in September 2012. Compl. ¶ 36. After completing three weeks of training, during which she did not receive any pay, *id*., plaintiff began working weekdays at the factory on West 36th Street. *Id.* ¶ 37. Her schedule required her to work from 9:00 a.m. to 6:00 p.m., Monday through Friday, with a half-hour lunch break, *id*.; however, plaintiff "almost always stayed past 6:00 p.m.," *id*., and her work hours "varied from 40 to over 52 hours per week." *Id.* ¶ 38. Plaintiff clocked in and out before and after her shifts, but she does not have access to those records. *Id*. ¶ 39.

Notwithstanding defendants' promises, plaintiff was paid "only $200-$400" (for the weeks in which she was paid at all), "regardless of the hours she worked." Compl. ¶ 43. She rarely received paystubs with her weekly wages. *Id.* ¶¶ 42-43. When she did, the stubs "accurately noted that Plaintiff's rate of pay was $20 per hour," but inaccurately "provided that she worked only 40 hours, when in truth plaintiff always worked more than 40 hours." *Id*. ¶ 41. For the weeks in which plaintiff worked more than 40 hours, defendants "neglected to pay her overtime premiums at the rate of 1.5 times her regular rate of pay" for each overtime hour. *Id*. ¶ 44. Similarly, defendants never paid any spread-of-hours compensation. Compl. ¶¶ 55-56. For

the last six months of her employment (May 2013 through December 2013), plaintiff did not receive any wages at all. *Id.* ¶ 45.

Plaintiff "complained about these underpayments," and even joined co-workers in a walkout, Compl. ¶ 1, before returning to work "upon assurances of future payment." *Id.* Defendants "fraudulently induced" her to "continue showing up to work by explaining that the business was short of money and by promising to pay her when they received payment from a large account." *Id.* ¶ 46.

### B.   Procedural History

Plaintiff filed her complaint on April 2, 2015, alleging four claims against all defendants: (1) failure to pay overtime compensation as required by the FLSA, 29 U.S.C. § 207(a); (2) failure to pay overtime compensation as required by the NYLL and related regulations, *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; (3) failure to pay spread-of-hours compensation as required by the NYLL and related regulations, *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a); and (4) failure to provide a wage notice at the outset of her employment, and wage statements with each payment of wages, as required by the Wage Theft Prevention Act, *see* NYLL § 195(1), 195(3). Compl. ¶¶ 57-77. On the same date, plaintiff filed a Statement of Relatedness (Dkt. No. 2), asserting that this action was related to *Tackie v. Keff Enterprises, LLC*, No. 14-CV-2074 (JPO).[2]

---

[2] The plaintiff in *Tackie*, who worked as a seamstress in the same knitting factory, sued the same defendants for failure to pay minimum wage and overtime wages between December 3, 2012 and December 11, 2013. *See* Compl. ¶¶ 1, 26, *Tackie v. Keff Enterprises, LLC*, No. 14-CV-2074 (JPO) (Mar. 24, 2014) (Dkt. Nos. 2, 19-2) (hereafter the *Tackie* Compl.). Like Mondragon, Tackie alleged that she was promised $20 per hour. *Id.* ¶ 27. After defendants failed to appear, Your Honor awarded Tackie a default judgment and damages in the aggregate amount of $39,903.46 against Keff Enterprises, Keff NYC, and Leonard Keff. *See Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7-8 (Sept. 16, 2014). Thereafter, plaintiff sought and obtained an extension of time to serve the fourth defendant, Schiffer, and, in due course, obtained an amended judgment which, *inter alia*, made Schiffer jointly and severally liable for the judgment

Plaintiff served all four defendants between June 18 and July 10, 2015, as follows: (i) Schiffer, by leaving a copy of the summons and complaint with his co-tenant on June 18 and by mail on June 19 (Dkt. No. 4); (ii) Keff, by leaving copies at his residence on June 22 and mailing copies to him on the same date (Dkt. No. 5)[3]; and (iii) the two corporate defendants, via the Office of the New York Secretary of State, on July 10, 2015. (Dkt. Nos. 6-7.) The defendants uniformly failed to respond.

On September 9, 2015, plaintiff requested and was issued a certificate of default against all defendants. (Dkt. No. 10.) On November 2, 2015, Plaintiff moved for the entry of a default judgment. (Dkt. No. 15.) On January 19, 2016, Your Honor directed entry of a default judgment in favor of plaintiff and against all defendants. (Dkt. No. 21.)

---

amount previously rendered. Order at 1, *Tackie v. Keff Enterprises, LLC*, No. 14-CV-2074 (JPO) (April 14, 2015) (Dkt. No. 48). On April 20, 2015, Your Honor accepted this action as related to *Tackie*.

[3] The process server made three prior attempts to serve Keff personally at his residence before serving him according to CPLR § 308(4), also known as the "nail and mail" method. (Dkt. No. 5.) Service pursuant to CPLR § 308(4) may be used only where service under CPLR § 308(1) (personal delivery) or § 308(2) (delivery to a "person of suitable age and discretion" at the defendant's home or business) cannot be made with "due diligence." CPLR § 308(4); *Bank United, FSB v. Verbitsky*, 167 A.D.3d 835, 837, 91 N.Y.S.3d 145, 147 (2d Dep't Dec. 19, 2018). Here, the process server demonstrated the requisite due diligence by attempting personal service on Keff at different times on four different dates, and by speaking with Keff's neighbor to confirm that Keff lived at the address listed on the summons. *See Verbitsky*, 167 A.D.3d at 837 (service was proper where the process server "made five attempts to effect personal service at the defendant's residence, at different times and on different days when the defendant could reasonably be expected to be home); *Nationstar Mortg., LLC v. Dekom*, 161 A.D.3d 995, 996, 78 N.Y.S.3d 148, 150 (2d Dep't May 16, 2018) (service was proper where process server made four visits "to the defendant's residence at different times when the defendant could reasonably have been expected to be found at home" and attempted "to ascertain the defendant's place of employment"); *Krodel v. Amalgamated Dwellings, Inc.*, 139 A.D.3d 572, 573, 32 N.Y.S.3d 139, 140 (1st Dep't May 24, 2016) (process server who on three different dates approached the building, rang the doorbell multiple times, and left after five minutes, met the minimum requirements for due diligence under CPLR § 308(4)). I therefore conclude that service on Keff pursuant to CPLR § 308(4) was effective.

On March 28, 2016, plaintiff filed her Proposed Findings of Fact and Conclusions of Law (Prop. Findings) (Dkt. No. 27), along with: (i) a damages chart (Chart) (Dkt. No. 27-1); (ii) plaintiff's supporting affidavit (Pl. Aff.) (Dkt. No. 27-2); (iii) four paystubs, each corresponding to a one-week period of plaintiff's employment (Pl. Paystubs) (Dkt. No. 27-3); (iv) a declaration from plaintiff's attorney Eli Freedberg in support of the attorney's fee request (Freedberg Decl.) (Dkt. No. 27-4); and (v) Freedberg's "invoice" detailing the work he did on the case (Freedberg Inv.) (Dkt. No. 27-5). On the same date, plaintiff served defendants with copies of the Proposed Findings by first class mail at the individual defendants' last known residential addresses and at the corporate defendants' last known corporate address (142 West 36th Street, New York, NY, 10018). *See* Aff. of Service filed Mar. 28, 2016 (Dkt. No. 28). Once again, defendants failed to respond.

Plaintiff seeks a damages award (exclusive of attorney's fees and costs) of $99,442.95, including: (i) $15,013.88 in minimum and overtime wages under the FLSA and NYLL (calculated at the rate of $7.25 per hour for plaintiff's regular hours and $10.88 for her overtime hours); (ii) $42,296.13 in breach of contract damages (calculated at the rate of $20 per hour); (iii) $15,013.88 in FLSA liquidated damages; (iv) $16,533.38 in NYLL liquidated damages; (v) $1,522.50 in spread of hours damages; (vi) $5,000 in NYLL statutory damages; and (vii) $4,060.20 in prejudgment interest "on the NYLL claims." Prop. Findings at 16.[4] In addition, plaintiff seeks $19,808.50 in attorney's fees and costs, representing 45.3 hours worked at an hourly rate of $425. Freedberg Decl. ¶¶ 12, 14, 16.

---

[4] Plaintiff's math is slightly off. The "total sum for all the damage components" asserted by plaintiff is $99,439.97, not $99,442.95.

Since no party has requested a hearing on the issue of damages, and since defendants have not submitted any written materials, I have conducted the inquest based solely upon the materials submitted by plaintiff. *See, e.g.*, *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993) (quoting *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)) ("Rule 55(b)(2) of the Federal Rules of Civil Procedure . . . 'allows but does not require the district judge to conduct a hearing.'").

## II.   ANALYSIS

### A.   Legal Standards

#### 1.   Determining Liability

Following a default, the Court must accept all well-pleaded factual allegations in the complaint as true, except those relating to damages. *See Tackie*, 2014 WL 4626229**,** at *2 (*citing* Fed. R. Civ. P. 8(b)(6) and *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013), *as amended* (Nov. 26, 2013))**;** *see also City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.").

However, a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015). The Court must therefore determine "whether the allegations in the complaint establish the defendants' liability as a matter of law." *Id.* (*citing Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). If the well-pleaded allegations

establish the defaulting party's liability, the only remaining issue is "whether plaintiff has provided adequate support for [her requested] relief." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

Conversely, if the well-pleaded factual allegations in the complaint fail to state a claim upon which relief can be granted, no damages can be awarded, even if the post-default inquest submissions supply the missing information. *See United States ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, 2014 WL 4652712, at *4 (S.D.N.Y. Sept. 2, 2014) (quoting *Gutman v. Klein*, 2010 WL 4975593, at *10 (E.D.N.Y. Aug. 19, 2010)) ("[i]t is the . . . [c]omplaint, not the inquest submissions, that establishes defendants' liability") (alterations in the original); *J & J Sports Prods., Inc. v. Abdelraouf*, 2019 WL 457719, at *2 (E.D.N.Y. Feb. 5, 2019) ("It is the moving party's burden to demonstrate that it is entitled to recovery based on the factual allegations pleaded in the complaint.").

### 2. Determining Damages

Although the Court must accept all well-pleaded facts as true when determining liability, it need not – and indeed cannot – rely on the plaintiff's allegations to establish her damages. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. Rather, "the plaintiff must produce evidence sufficient to establish her damages with 'reasonable certainty.'" *Tackie*, 2014 WL 4626229, at *1 (quoting *Cement and Concrete Workers*, 699 F.3d at 235). Where, as here, the defendants have failed to produce any employment records, the Court may credit the plaintiff's "recollections regarding [her] hours and pay in conducting its inquest." *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018). However, "the Court must ensure that [p]laintiffs' approximations and estimates are reasonable and appropriate." *Id.*; *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 378 (E.D.N.Y.

2012) (finding that plaintiffs' method of estimating hours worked by averaging the hours listed in the available payroll records with the hours recalled and described in plaintiffs' declarations was reasonable where defendants failed to maintain adequate records).

Regardless of the evidence submitted, "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) ("By limiting damages to what is specified in the "demand for judgment," [Rule 54(c)] ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer."); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018) ("a plaintiff cannot recover damages against a defaulted defendant for claims never alleged in its pleading"); *U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Envtl. Universal Servs., Inc.*, 2014 WL 4652712, at *4 (S.D.N.Y. Sept. 2, 2014) (quoting *Gutman v. Klein,* 2010 WL 4975593, at *10 (E.D.N.Y. Aug, 19, 2010)) ("the Court may not award damages against USEUS and Palonia based upon a Miller Act claim" never pled against them).

In her Proposed Findings, plaintiff seeks monetary damages for – among other things – unpaid minimum wages (at $7.25 per hour) and "contractual wages" (at $20 per hour) for the periods in which she asserts that she was underpaid (or not paid at all) for her first 40 hours of work. Prop. Findings at 12-16. However, she has not pled either of those claims. Rather, as noted above, plaintiff pled two claims for unpaid *overtime* compensation (one under federal law and one under state law), one claim for unpaid spread-of-hours pay, and one claim for failure to furnish a wage notice or wage statements. Compl. ¶¶ 57-77. Similarly, plaintiff's prayer for relief – which used generic language to request a judgment "in the amount of unpaid wages owed,"

Compl. at ECF page 11 – failed to put defendants on notice that she sought recovery of any unpaid wages other than overtime wages. Moreover, plaintiff was and is represented by an "experienced wage and hour litigator," Freedberg Decl. ¶ 2; *see also id*. at ¶¶ 5-6 (elaborating on counsel's expertise), who had the benefit of the earlier-filed *Tackie* complaint as a model for the complaint filed here.[5] Consequently, no damages can be awarded to plaintiff on her unpled claims.[6]

### B.    Jurisdiction and Venue

I am satisfied that this Court has subject matter jurisdiction over plaintiff's claims. Because Mondragon sues under a federal statute – the FLSA – subject matter jurisdiction is

---

[5] Tackie clearly alleged claims for unpaid minimum wages under both the FLSA and the NYLL. *See Tackie* Compl. ¶¶ 32, 42.

[6] Plaintiff acknowledges that "the breach of contract claim was not explicitly pled as a cause of action," but contends, relying on *Belizaire v. RAV Investigative & Sec. Servs. Ltd*., 61 F. Supp. 3d 336 (S.D.N.Y. 2014), that it was "implicitly pled," and thus, she is now entitled to $42,000 in breach of contract damages in addition to her FLSA and NYLL remedies. *See* Prop. Findings at 14, 16. In *Belizaire*, Your Honor adopted the report and recommendation of Magistrate Judge Freeman, which reasoned that although plaintiff's *pro se* complaint "expressly assert[ed] only discrimination claims," it should nonetheless be deemed to raise "wage claims and retaliatory discharge claims" under the FLSA and NYLL, because "the primary conduct about which [plaintiff] complains is Defendant's purported failure to pay his wages fully and on time." *Id*. at 352. *Belizaire* expressly relied upon the well-settled principle that "[i]n evaluating a *pro se* complaint, a court is not limited to the causes of action specified by the plaintiff, but instead 'must construe it liberally, applying less stringent standards than when a plaintiff is represented by counsel' . . . and must construe it to raise the strongest claims it suggests." *Id*. at 344 (quoting *Branham v. Meachum,* 77 F.3d 626, 628-29 (2d Cir.1996)). The "less stringent standards" applied in *Belizaire* do not assist plaintiff Mondragon. Her complaint was drafted by an experienced wage and hour attorney who knew enough to cite specific provisions of the FLSA and NYLL, but chose *not* to plead any claim for unpaid wages other than overtime wages. Defendants were therefore entitled, when "considering default," to assume that they would "suffer judgment" in the amount of unpaid overtime wages only. *Silge*, 510 F.3d at 160. The remaining cases cited by plaintiff in support of her belated claim for contract damages are inapposite. In *Terwilliger v. Terwilliger*, 206 F.3d 240 (2d Cir. 2000), the breach of contract claim was expressly pleaded. Similarly, in *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 459 (E.D.N.Y. 2011), plaintiff "specifically alleg[ed] breach of contract and unjust enrichment" claims – which, in any event, the court dismissed as duplicative of his statutory claims under the overtime provisions of the FLSA and the NYLL. *Id*. at 470.

properly based on 28 U.S.C. § 1331. To the extent she has adequately pleaded state law claims arising out of the same facts and circumstances, the Court may exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

I am also satisfied as to personal jurisdiction over the defendants, which is "a necessary prerequisite to entry of a default judgment." *Reilly v. Plot Commerce*, 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016) (quoting *Sheldon v. Plot Commerce*, 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016)). As noted above, the corporate defendants are New York corporations with their principal place of business in New York City. Compl. ¶¶ 9, 13. This makes them "amenable to general personal jurisdiction throughout the state under New York law," *Reilly*, 2016 WL 6837895, at *3; *see also Magdalena v. Lins*, 999 N.Y.S.2d 44, 45 (1st Dep't 2014), and the exercise of such jurisdiction "comports with the requirements of the Due Process Clause." *Reilly*, 2016 WL 6837895, at *3; *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (a corporation is amenable to "all-purpose jurisdiction" where is it incorporated and where it has its principal place of business).

Similarly, the Court may exercise personal jurisdiction over defendant Keff, who resides in New York and "actively participated" in the business of Keff Enterprises, of which he was an owner or shareholder, Compl. ¶¶ 17-19, and defendant Schiffer, another "resident of New York," who "actively participated" in the business of Keff NYC, of which he held himself out as CEO. *Id*. ¶¶ 23-25. All defendants appear to have been properly served, *see* § I(B) of this Report, *supra*, and venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

### C.    Liability

To state an FLSA wage claim, a plaintiff must allege three things: "that she was the defendant's employee, that her work involved interstate activity, and that she worked hours for

11

which she did not receive minimum and/or overtime wages." *Tackie*, 2014 WL 4626229, at *2

(citing *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)). Determining

NYLL wage and hour violations involves a similar analysis, "except that the NYLL does not

require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual

sales." *Tackie*, 2014 WL 4626229, at *2 n.2 (S.D.N.Y. Sept. 16, 2014) (citing *Alvarez v. Michael

Anthony George Const. Corp.*, 15 F. Supp. 3d 285, 291 (E.D.N.Y. 2014)).

If the claim is for overtime compensation, the "[p]laintiff[ ] must allege sufficient factual

matter to state a plausible claim that [she] worked compensable overtime in a workweek longer

than 40 hours." *Lundy v. Catholic Health Sys. Of Long Island, Inc*. 711 F.3d 106, 114 (2d Cir.

2013). To state a claim for spread-of-hours pay, she must also allege that she worked "more than

ten hours per day . . . and [was] not paid an additional hour at the minimum wage rate for days in

which [she] worked 10 or more hours." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d

114, 122-23 (E.D.N.Y. 2011); *accord Euceda v. Preesha Operating Corp.*, 2016 WL 8711446, at

*5 (E.D.N.Y. July 13, 2016), *report and recommendation adopted,* 2016 WL 8711193 (E.D.N.Y.

Sept. 30, 2016).

I consider each of these issues in turn.

### 1.      Employee-Employer Relationship

The FLSA defines "employer" as "any person acting directly or indirectly in the interest

of an employer in relation to an employee." 29 U.S.C. § 203(d). The Supreme Court has

emphasized that this is an expansive definition with "striking breadth." *Nationwide Mut. Ins. Co.

v. Darden*, 503 U.S. 318, 326 (1992). Moreover, "[a]n individual may simultaneously have

multiple 'employers' for the purposes of the FLSA, in which event, 'all joint employers are

responsible, both individually and jointly, for compliance with all of the applicable provisions of

the [FLSA].'" *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether a plaintiff is an "employee" of a particular "employer" for FLSA purposes, courts examine the "economic reality" of the working relationship. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013); *Tackie*, 2014 WL 4626229, at *2. In the Second Circuit, courts examine four nonexclusive factors to assess the "economic reality" of an alleged employment relationship, including: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 105 (quoting *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).[7] "The inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive." *Tackie*, 2014 WL 4626229, at *2.

Similarly, under the NYLL, the definition of "employer" is very broad, *see* NYLL § 190(3) ("employer" means "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service"), and the crucial inquiry, in determining whether an employer-employee relationship exists, is the "degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (citing *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198, 802 N.E.2d 1090 (2003)). Although the

---

[7] The court may also consider factors such as: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Barfield*, 537 F.3d at 142 (quoting *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058-59 (2d Cir. 1988)).

New York Court of Appeals "has not yet answered the question of whether the test for 'employer' status is the same under the FLSA and the NYLL," *Camara v. Kenner*, 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018) (citing *Irizarry*, 722 F.3d at 117), "[t]here is general support for giving FLSA and the New York Labor Law consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." *Hart*, 967 F. Supp. 2d at 924 (internal citations omitted). *See also Camara*, 2018 WL 1596195, at *7 ("courts have assumed" that the test is the same under federal and New York law). "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." *Martin*, 273 F. Supp. 3d at 422.

Plaintiff alleges that each of the four defendants was "an employer of Plaintiff," and that at all relevant times she was "an employee." Compl. ¶¶ 12, 16, 22, 28, 30. Her factual allegations adequately support those assertions. Plaintiff worked as the Finishing Department Supervisor in defendants' knitting factory. Compl. ¶¶ 1, 33. Her responsibilities included managing the "flow of production [on] the factory floor," ensuring "shipments went out on time," quality control, and training "hand finisher[s] and menders." *Id*. She did not have authority to hire, fire, or discipline other employees, and she did not control the work schedule or the wages of other employees. *Id*. ¶ 34*; see also id*. ¶¶ 36-37 (defendants set plaintiff's work schedule and required her to clock in and clock out of her shifts).

There is no suggestion that plaintiff had any "investment" in the business or "opportunity for profit or loss." *Barfield*, 537 F. 2d at 142. Nor did her job require any extraordinary skill or independent initiative. To the contrary: plaintiff learned about the position from a recruiter, and defendants "sent her to a training session for three weeks" before she began working in the

14

factory. *Id.* ¶¶ 35-36. Moreover, plaintiff was not hired to complete a discrete project; rather, she was a permanent employee, with regular hours determined by defendants, performing a job (managing the factory floor) that was integral to the defendants' manufacturing operations. *Id.* ¶ 37. Thus, plaintiff has plausibly alleged the she was defendants' employee. *See Tackie*, 2014 WL 4626229, at *3 (finding plaintiff's allegations "sufficient to state a plausible claim that her employment relationship with Defendants was covered by the FLSA").

"The determination of whether [two corporate] defendants are plaintiffs' joint employers is to be based on the circumstances of the whole activity . . . viewed in light of economic reality." *Martin*, 273 F. Supp. 3d at 421 (internal quotation marks and citations omitted). *See also Camara*, 2018 WL 1596195, at *8 (quoting *Brown v. Daikin Am. Inc.*, 756 F.2d 219, 226 (2d Cir. 2014) (noting that while some courts in this Circuit use the "single integrated enterprise" rule, under which "control of labor relations is the central concern," others apply "the traditional economic realities test to determine whether multiple legal entities constitute a single employer for FLSA purposes").

In this case, although plaintiff does not expressly allege that the two corporate defendants were her joint employers, her factual allegations are consistent with that conclusion. Keff Enterprises and Keff NYC both did business at 142 West 36th Street in New York City, where Mondragon alleges she was employed. Compl. ¶ 9, 13, 37. Leonard Keff, who was an owner or shareholder of Keff Enterprises, was the "DOS Process agent" for both corporate defendants. *Id.* ¶¶ 9, 13, 18.[8] Moreover, management of the factory workforce was shared by Keff and Schiffer

---

[8] The four wage statements that plaintiff submitted with her Proposed Findings list her employer as Keff Enterprises, with an address at 142 West 36th Street, 2d Floor, New York, NY 10001. *See* Pl. Paystubs at ECF pages 1-4. This does not mean, however, that Keff NYC was not also her employer for purposes of the FLSA and the NYLL. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 70 (2d Cir. 2003) ("[I]n certain circumstances, an entity can be a joint employer

(the CEO of Keff NYC), both of whom had the power to hire and fire workers and set rates of pay. Compl. ¶¶ 20-21, 24-26. More generally, plaintiff alleges that all "defendants" "hired" her, "sent her to a training session," "scheduled" her hours, and required her to "clock-in and clock-out." Compl. ¶¶ 36-39. Thus, as in *Tackie*, plaintiff has plausibly alleged that "the knitting factory was under the common control of each of the Defendants, including Keff Enterprises LLC and Keff NYC, Inc." 2014 WL 4626229, at *1.

Similarly, plaintiff has plausibly alleged that the two individual defendants were her employers for FLSA and NYLL purposes. As noted above, defendant Keff was an owner or shareholder of Keff Enterprises, while defendant Schiffer was the CEO of Keff NYC. Both men "actively participated" in the business, Compl. ¶¶ 19, 26, and both had authority to hire and fire employees, including plaintiff, set their schedules, and determine their rates of pay. *Id.* ¶¶ 21, 26. Keff "exercised substantial control over the functions of the company's employees," including directing their "daily activities," and plaintiff considered him her "direct supervisor as well as her boss." *Id.* ¶¶ 20-21. Schiffer "actively managed certain aspects of the company's operations" and had the power to remedy wage and hour violations. *Id.* ¶¶ 26-27. These allegations are sufficient to permit the damages inquest to proceed against both individual defendants. *See Tackie*, 2014 WL 4626229, at *3 (finding that Keff was an employer because he determined plaintiff's hourly pay rate and had the authority to hire and fire her).

### 2.    Interstate Commerce

The FLSA requires an employee to establish that either she or her employer was engaged in interstate commerce. *See Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a

---

under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them.")

whole, is a prerequisite for liability for the FLSA's overtime requirement."); *see also* 29 U.S.C. § 207(a)(1) (employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at "one and one-half times the regular rate at which he is employed"). The plaintiff bears the burden of establishing either "'individual coverage' through his personal engagement in interstate commerce or 'enterprise coverage' through the employer's engagement in interstate commerce." *Ethelberth*, 91 F. Supp. 3d at 353.

Here, plaintiff has plausibly alleged FLSA coverage under both theories. Mondragon worked in defendants' "knitting factory," managing factory floor production and ensuring timely shipment. Compl. ¶¶ 1, 31, 33, 37. Thus, she is an individual "engaged in commerce or in the production of goods for commerce" for the purposes of the FLSA. *See Tackie*, 2014 WL 4626229, at *3 ("Tackie has alleged that the knitting factory produced garments, which are goods produced in commerce for purposes of FLSA. . . . Therefore, her work for the factory is covered by the FLSA.") (internal citation omitted). Additionally, plaintiff has alleged that each corporate defendant is engaged in the production of goods for interstate commerce and has an annual gross revenue of $500,000, Compl. ¶¶ 10, 11, 14, 15, as required for enterprise liability under the FLSA. *See* 29 U.S.C. § 203(s)(1)(A). Therefore, the FLSA covers plaintiff's employment with defendants.

### 3.    Unpaid Overtime

Both the FLSA and the NYLL require an employer to pay an overtime rate of one and a half times the employee's "regular rate" of pay. 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. To state an overtime claim, "a plaintiff must allege only that she worked compensable overtime in a workweek longer than forty hours, and that she was not properly compensated for that overtime." *Tackie*, 2014 WL 4626229, at *3 (citing *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 199-201 (2d Cir. 2013)). Mondragon alleges

she worked "from 40 to over 52 hours per week" every week from September 2012 through December 2013, on a regular schedule, Monday through Friday, from 9:00 a.m. to "past 6:00 pm." Compl. ¶¶ 31, 37, 38. She was hired at the regular rate of $20 per hour but was never paid anything – much less time and a half – for her overtime hours. *Id*. ¶¶ 32, 36, 43, 44, 45. Thus, Mondragon has adequately stated a claim for unpaid overtime wages under the FLSA and the NYLL.

### 4.    Unpaid Spread-of-Hours Pay

New York employers are required to pay covered employees one extra hour's compensation, at the basic minimum wage rate, for each day on which they worked more than ten hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4(a).[9] Spread-of-hours wages may be recovered in addition to federal and state overtime claims. *See, e.g., Yang v. ACBL Corp.,* 427 F.Supp.2d 327, 338-41 (S.D.N.Y. 2005); *Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at *25 (S.D.N.Y. Feb. 1, 2007). However, "[o]nly employees making the minimum wage rate, or less, are eligible for spread-of-hours compensation." *Hernandez v. Delta Deli Mkt. Inc.*, 2019 WL 643735, at *7 (E.D.N.Y. Feb. 12, 2019) (citing *Sosnowy*, 764 F. Supp. 2d at 473-74); *accord Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 368 (S.D.N.Y. 2012) (Oetken, J.). Here, plaintiff's regular rate of pay, $20 per hour, substantially exceeded the applicable minimum wage, which was $7.25 at all relevant times. *See* NYLL § 652 (2004) (amended 2013); NYLL § 652 (2013) (amended 2016). Therefore, although plaintiff alleges that "[a]t times, [she]

---

[9] In the Complaint, plaintiff cites N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 in connection with her claim for spread-of-hours compensation. Compl. ¶ 72-74. However, § 146-1.6 governs employees in the hospitality industry and does not apply to plaintiff. Plaintiff's employment was governed by Part 142 of title 12, which applies to "miscellaneous industries and occupations." Thus, § 142-2.4(a) is the applicable regulation for plaintiff's spread-of-hours claim.

worked more than 10 hours in a workday," Compl. ¶ 73, she is not entitled to recover spread-of-hours damages under state law.

### D.       Statute of Limitations

The statute of limitations for claims under the NYLL is six years. *See* NYLL § 198(3). The statute of limitations for claims under the FLSA is two years, *see* 29 U.S.C. § 255(a), unless the violations were "willful," in which case the limitations period increases to three years. *Id.*; *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129 (1988). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited[.]" *McLaughlin*, 486 U.S. at 133.

Mondragon claims that defendants underpaid her throughout most of her employment, despite her complaints about the underpayments and her participation in an employee walkout, after which defendants made promises to pay her, but failed to keep those promises. Compl. ¶¶ 1, 46. Mondragon has thus adequately alleged willfulness. Moreover, "defendants' default in this case and their failure to participate in the proceedings will be taken as additional support for a finding of willfulness within the meaning of FLSA." *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 315 (S.D.N.Y. 2014); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 297 (E.D.N.Y. 2011) (collecting cases). Consequently, a three-year statute of limitations applies to plaintiff's FLSA claims.

Plaintiff filed this action in April 2015, which was only two and a half years after she commenced employment with defendants in September 2012. Compl. ¶ 31. All of her claims, therefore, were brought within the applicable statute of limitations.

### E.     Damages

#### 1.     Unpaid Overtime Damages

Plaintiff attests that she frequently worked more than 40 hours per week but was never paid anything for her overtime hours. During the three weeks that she spent in "training sessions," plaintiff worked 45 hours per week, Pl. Aff. ¶ 4, including five hours of overtime per week for which she was not paid. For the next 67 weeks, plaintiff estimates that she worked "approximately 46 hours per week," *id*. ¶ 6, including six hours of overtime for which she was not paid.  In total, therefore, plaintiff worked 417 hours of overtime for which she was not paid.

Plaintiff's "regular rate of pay" was $20 per hour. Pl. Aff. ¶ 9. This rate is reflected on three of the paystubs that plaintiff has produced, two of which report "regular" earnings of $800 for 40 hours of work at the rate of $20 per hour, and one of which reports regular earnings of $400 for 20 hours of work at the rate of $20 per hour. *See* Pl. Paystubs at ECF pages 1, 3, 4.[10] Consequently, under both the FLSA and the NYLL, plaintiff is entitled to $30 for each overtime hour for which she was not paid, for a total of $12,510 (417 x $30). *See Tackie*, 2014 WL 4626229, at *4.

#### 2.     Spread-of-Hours Damages

As noted above, plaintiff is not entitled to damages for unpaid spread-of-hours pay because her regular rate of pay was above the minimum wage. In addition, she has failed to produce evidence that she worked more than 10 hours on any one day, much less on multiple days. In her affidavit, plaintiff attests that "on average," she worked from 9:00 a.m. to 7:00 p.m. each weekday, with a one-half hour lunch break. Pl. Aff. ¶ 5. On days when she worked that schedule, plaintiff did not work "more than" 10 hours, as required by N.Y. Comp. Codes R. &

---

[10] The remaining paystub reflects "regular" earnings of $800 but does not specify either the number of hours worked or the rate of pay. *See* Pl. Paystubs at ECF page 2.

Regs. tit. 12, § 142–2.4(a). *See Ortega v. JR Primos 2 Rest. Corp.*, 2017 WL 2634172, at *3 (S.D.N.Y. June 16, 2017) (plaintiff who alleged that he worked exactly 10 hours per day "failed to establish liability for any unpaid spread-of-hours pay"). Plaintiff also attests – somewhat inconsistently – that "on average" she worked "approximately 46 hours per week" from Monday through Friday, *id*. ¶ 6, which implies an average workday of only 9.2 hours. Plaintiff provides no other admissible evidence concerning her work hours. Thus, even if she had adequately alleged a claim for spread-of-hours pay, she would not be entitled to damages on that claim.

### 3.    Liquidated Damages

Plaintiff requests liquidated damages, in the amount of 100% of her actual unpaid wages, under both the FLSA and the NYLL. Compl. ¶¶ 63, 71; Prop. Findings at 7-8. However, the Second Circuit does not permit a plaintiff to recover liquidated damages under both the FLSA and the NYLL. *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. App'x 59, 60 (2d Cir. 2016). Instead, "plaintiff should be permitted recovery 'under the statute that provides the greatest relief.'" *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, 2016 WL 8650464, *27-28 (S.D.N.Y. Nov. 7, 2016) (quoting *Castillo v. RV Transp., Inc.*, 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016)); *see also Quiroz v. Luigi's Dolceria, Inc.*, 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016) (the court will "rely on the statute that provides the greater recovery to the plaintiff"); *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) ("[T]o the extent the plaintiffs' allegations allow recovery under both state and federal law, the law providing for the greatest recovery will govern the calculation of damages."), *report and recommendation adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).

Here, because the NYLL allows for pre-judgment interest in addition to liquidated damages, NYLL § 198(1-a), but the FLSA does not, *see Valdez v. H & S Rest. Operations, Inc.*,

2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted,* 2016 WL 3087053 (E.D.N.Y. May 27, 2016), the NYLL will provide the greatest relief.

Under the NYLL, employers are liable for liquidated damages equal to the full amount of the unpaid wages to which the employee is entitled "under the provisions of this article," unless they can demonstrate that they acted in "good faith." NYLL § 198(1-a). Because a showing of good faith is an affirmative defense under NYLL § 198, a defaulting defendant cannot carry this burden. *See Tackie*, 2014 WL 4626229, at *4 (citing *Jaramillo v. Banana King Rest. Corp.,* 2014 WL 2993450, *5 (E.D.N.Y. July 2, 2014)). Thus, plaintiff is entitled to another $12,510, as liquidated damages, with respect to her unpaid overtime wages.

### 4.  Prejudgment Interest

As discussed above, prejudgment interest is not available under the FLSA where liquidated damages have already been awarded. *Valdez,* 2016 WL 3079028, at *6. However, plaintiff may recover both liquidated damages and prejudgment interest under NYLL § 198(1)(a). "The Second Circuit has held that even where a plaintiff is awarded liquidated damages under the NYLL, prejudgment interest still is appropriate." *Andrade v. 168 First Ave Rest. Ltd.*, 2016 WL 3141567, at *10 (S.D.N.Y. June 3, 2016) (citing *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)), *report and recommendation adopted*, 2016 WL 3948101 (S.D.N.Y. July 19, 2016). This is because liquidated damages are considered punitive under the NYLL while prejudgment interest "compensate[s] a plaintiff for the loss of use of money." *Reilly,* 181 F.3d at 265 (quoting *Chandler v. Bombardier Capital Inc.,* 44 F.3d 80, 83 (2d Cir. 1994)). Thus, "prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages." *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016) (quoting *Maldonado v. La*

*Nueva Rampa, Inc.*, 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012)), *report and recommendation adopted*, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).

New York's prejudgment interest rate is 9% per annum, N.Y. C.P.L.R. 5004, and is computed "on a simple interest basis." *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998). "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. 5001(b); *see also Marfia*, 147 F.3d at 91 ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation."). In NYLL cases, courts often calculate prejudgment interest from the midpoint of the plaintiff's employment. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012) (collecting cases). I recommend that method here, and compute prejudgment interest from May 1, 2013, which was the median date of plaintiff's employment. Six years and 31 days have passed since then. Therefore, the interest accrued from May 1, 2013 through the date of this Report is $6,854.48. ($12,510 x .09 x 6.088 years).

### 5.      Statutory Penalties

The New York Wage Theft Prevention Act (WPTA), which became effective April 9, 2011, required defendants to provide plaintiff, at the time of hiring, with a notice containing, *inter alia*, the rate and frequency of her pay, NYLL § 195(1), and to furnish her with a written statement with each payment of wages, listing, *inter alia*, the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked. NYLL § 195(3). During the period of plaintiff's employment, the WPTA allowed employees to recover damages of $50 per work week for violations of NYLL § 195(1), up to a total of $2500, and $100 per work week

for violations of NYLL § 195(3), also up to a total of $2500. NYLL § 198(1-b), (1-d) (2011) (amended 2015).

Mondragon has alleged that defendants failed to provide her with a wage notice at the date of her hiring and each year after that. Compl. ¶ 53; *see also* Pl. Aff. ¶ 18. She has also alleged that she received only four paystubs during her 16-month employment with defendants, which were inaccurate with respect to hours, and which failed to comply with the requirements of NYLL § 195(3). Compl. ¶¶ 40-43, 54; *see also* Pl. Aff. ¶¶ 9-10, 16-17. Therefore, plaintiff is entitled to the maximum recovery of $5,000 in statutory damages for violations of the WTPA.[11]

### F.    Attorney's Fees

Plaintiff requests an award of $19,808.50 for costs and attorney's fees. Freedburg Aff. ¶ 16. Both the FLSA and the NYLL allow a successful plaintiff to recover reasonable attorney's fees. 29 U.S.C. § 216(b); NYLL §§ 198, 663. To determine a "presumptively reasonable fee," the Court multiplies the hours counsel reasonably spent on the litigation by a reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2008)). "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotations omitted).

---

[11] Prejudgment interest is not available for violations of the wage statement or wage notice provisions of the NYLL. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), *aff'd,* 752 F. App'x 33 (2d Cir. 2018); *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

### 1.      Reasonable Hourly Rate

"In determining whether an hourly rate is reasonable, the Second Circuit has observed that the court should apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill." *Galeana*, 120 F. Supp. 3d at 323 (citing *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir.1998)). Additionally, a court may adjust the hourly rate to account for case specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the "undesirability" of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

*Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 430 n.3 (1983)).

Courts in this district generally award experienced wage-and-hour attorneys from $300 to $400 per hour. *See Sanchez v. Jyp Foods Inc.*, No. 16-CV-4472 (JLC), 2018 WL 4502008, at *15 (S.D.N.Y. Sept. 20, 2018) (citing *Surdu v. Madison Global, LLC*, 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more decades of experience)); *Pastor v. Alice Cleaners, Inc.*, No. 16-CV-7264 (JLC), 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017) ("Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (collecting cases). *But see Williams v. Epic Sec. Corp.*, 2019 WL 1322384, at *3 (S.D.N.Y. Mar. 25, 2019) (awarding lead attorney with 32 years of experience $600 per hour and a junior partner with 11 years of experience, but no prior wage-and-hour experience, $350 per hour).

Here, plaintiff's counsel, Eli Freedberg, seeks an hourly rate of $425. In support of his fee application, Freedberg attests that he is "an experienced wage and hour litigator" who graduated from law school in 2002 and was admitted to practice in New York in 2003. Freedberg Decl. ¶¶ 2-3. After working for two commercial litigation boutiques, he began working at Fox Rothchild, a "national law firm," where he was "the attorney of record for dozens of putative wage and hour class and collective action lawsuits pending in this district," and became a partner at the firm in 2012. *Id*. ¶¶ 4-5. Later that year, Freedberg left the firm to start a solo practice, where his "specialization continues to be in the field of wage and hour law." *Id*. ¶¶ 5-6.

Although Freedberg appears to have substantial experience in wage and hour litigation, $425 is at the higher end of the range that the courts generally award even experienced litigators. Moreover, this action (which was at least the second case filed against the same defendants arising out of the same pay practices) did not present any novel or difficult questions of law and, as result of defendants' default, did not present any evidentiary challenges. Consequently, I recommend that Freedberg's hourly rate be set at $350 for purposes of the instant damages inquest.

## 2.     Reasonable Hours

An application for attorney's fee must include "contemporaneous time records" that specify "the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Freedberg submits five pages of time records, listing 45.3 hours worked on this action. Freedburg Decl. ¶ 14; Freedberg Inv. at 1-5. However, at least 13.2 of the listed hours occurred prior to the drafting and filing of the complaint in this action – when plaintiff was apparently attempting to opt-in to a previous action against the defendants. Freedberg Inv. at 1-3. An additional 4.1 hours appears to have been spent researching and drafting a motion for attachment that was never filed. *Id*. at 3.

26

Moreover, as noted above, counsel failed to plead any claim on plaintiff's behalf for unpaid wages (whether at the minimum wage or at contractual rates) other than overtime wages. Accordingly, the total number of hours for which fees are awarded should be reduced by half, to 22.65 hours. *See Hernandez v. NJK Contractors, Inc.*, 2015 WL 5178119, at *5 (E.D.N.Y. Sept. 3, 2015) (reducing attorney's fees by one-third due to excessive billing); *Tucker v. City of New York*, 704 F. Supp. 2d 347, 357 (S.D.N.Y. 2010) (reducing one attorney's hours by one-third and another attorney's hours by fifty percent where time was billed for communicating with outside attorneys, performing investigations that a single attorney could manage, and performing work that could be handled by clerical staff). On this basis, I respectfully recommend that plaintiff be awarded attorney's fees of $7,927.50 ($350 per hour x 22.65 hours).

### 3.    Costs

Plaintiff requests costs in the amount of $556 for the filing fee and process service. Freedberg Decl. ¶ 15. These costs are reasonable, *see* Local Civil Rule 54.1, and should be included in the award.

### III.        CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff be awarded damages in the amount of $30,020, representing (a) $12,510 in unpaid overtime wages, (b) $12,510 in liquidated damages under state law, and (c) $5,000 in statutory damages under state law. In addition, I recommend prejudgment interest in the amount of $6,854.48, plus additional prejudgment interest at the rate of $3.08 per day ($12,510 x .09/365) from the date of this Report to the date of entry of final judgment, and attorney's fees and costs in the amount of $8,483.50.

Dated: New York, New York
         May 31, 2019

_____
**BARBARA MOSES**
**United States Magistrate Judge**


### <u>NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS</u><br><u>TO THIS REPORT AND RECOMMENDATION</u>

The parties shall have fourteen days from the service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. J. Paul Oetken at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned Magistrate Judge. Any request for an extension of time to file objections must be directed to Judge Oetken. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).